(23 Misc. Rep. 82.)

FORTUNATO v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. February, 1898.)

REFEREES—DISQUALIFICATION.

The fact that a referee is retained as counsel in other proceedings, in which he has exceptional qualifications, after his appointment as referee by a defendant in the reference case, is not, in the absence of proof that such retainer influenced the referee's decision, sufficient ground for setting aside the referee's report and the judgment entered thereon.

Action by Maicho Fortunato against the mayor, aldermen, and commonalty of the city of New York and others. On motion of Helen A. Dawson, administratrix of the estate of John F. Dawson, deceased, to set aside a referee's report and the judgment entered thereon. Denied.

C. J. G. Hall, for the motion.

John Whalen, counsel to the corporation (Theodore Connolly, of counsel), for mayor, etc., of city of New York.

Deyo, Duer & Bauerdorf, opposed.

FREEDMAN, J. This is a motion made by the defendant Helen A. Dawson, administratrix, etc., to set aside a referee's report and the judgment entered thereon. The questions litigated before the referee were as to the amount due from the city, if any, upon a contract between the city and John F. Dawson for regulating and grading Edgecomb avenue, and to whom that money, if any was due, should be paid. Dawson had assigned the moneys coming due on the contract to two

different parties, viz. the Twelfth Ward Bank and Thomas Patten, for
the repayment of moneys borrowed by Dawson from both.    The final
estimate did not show enough money to satisfy both claims, but Daw-
son made an additional claim for extra work.    If this claim for extra
work had been allowed, there would be sufficient money to pay substan-
tially both the bank and Patten, and the litigation between the bank
and the Patten estate, each claiming priority, would soon be ended.
Both the bank and Patten's estate, therefore, sought to have Dawson's
claim for extra work against the city allowed; and, while each claimed
priority as against the other, they both desired this additional sum to
fall back upon.    The referee decided adversely to the bank, in favor of
Patten's estate, and against Dawson's claim for extra work.    After
the report had been filed and judgment had been entered thereon, the
bank and Dawson's estate appealed.    After that, it is claimed, it was
discovered by the attorney and counsel of the estate of Dawson that,
during the pendency of the reference before him, the referee, Thomas
Allison, Esq., had accepted retainers as counsel from the defendant,
the city, in several proceedings.    This is claimed to have been legal
misconduct in the referee, for which his report and the judgment
entered thereon should be set aside, and the present motion is made
by Helen A. Dawson, as administratrix, etc., for that purpose.

It is undoubtedly true that references have been set aside on very
slight proof of improper relations between the referee and the adverse
party; and it may be conceded that the court should be swift in doing
so, where but one inference can arise from the retainer of the referee,
and such inference makes it apparent that harm might have come to
the moving party by reason of the relations between the adverse party
and the referee.    Stebbins v. Brown, 65 Barb. 272, is a leading au-
thority upon that point.    But in the case at bar an exceptional state of
facts has been presented.    Mr. Thomas Allison has long been known
and treated by the profession as a lawyer possessing special knowledge
of all laws relating to the city and county of New York, and of the
various departments thereof, and having vast practical experience in
important litigations in which the city has been engaged.    As a conse-
quence thereof, he has during the last 20 years been retained as spe-
cial counsel, not only for the city, but also and more frequently against
the city.    Moreover, during the same period, he was, in view of his
exceptional qualifications in that respect, frequently selected, by the
consent of all parties interested, to act as referee in litigations involv-
ing questions under the laws applicable to the city and county of New
York.    These facts are well known throughout the legal profession,
and the attorney and counsel for the moving party must have been well
aware of their existence in general, and yet, with such knowledge, he
consented to the appointment of Mr. Allison as referee.    The claim
is made, however, by said attorney and counsel, that, since the filing of
the referee's report, he discovered for the first time that during the
pendency of the reference Mr. Allison acted as special counsel for the
city in five school-site cases, and in the case commonly known as the
"Speedway Case."    That Mr. Allison so acted is conceded.    In the
school-site cases he was retained during the pendency of the reference.
In the Speedway Case he was retained years before the reference.

Assuming, then, that the discovery of these particular facts did not occur before the time alleged, the question remains as to the importance to be given to such particular facts.

In view of the well-known general situation of affairs, the particular facts subsequently discovered are relatively unimportant, unless it is shown that Mr. Allison was probably influenced by his retainers in these matters. No such proof has been given, nor can any such inference be legitimately drawn. No claim or criticism is made that he was overpaid for his services. Moreover, it has been distinctly shown that at no time did Mr. Allison ever act for and against the city in the same proceeding, or act as referee in any action or proceeding in which he had ever advised either of the parties as to any matter involved in the reference before him, or had acted as attorney or counsel for either of the parties as to any matter so involved. And it further appears that the attorney making the present motion, as attorney for the Dawson estate, acted on the trial before Mr. Allison in concert with, and not in opposition to, C. W. Dayton, the attorney for the Twelfth Ward Bank; that they both opposed the claims of the city and of the Patten estate; that, within the past few years, Mr. Allison has twice acted as counsel in behalf of the said Twelfth Ward Bank in matters in which said Dayton was attorney; that, at the very time the reference herein was proceeding before Mr. Allison, he was, and he still is, counsel for the president of said bank in an action to which such president was a party individually, and which involves a large amount; and that, nevertheless, Mr. Allison decided against the bank in this action. Moreover, the bank does not join in the present attack upon Mr. Allison, although it has a very large and substantial interest, while the Dawson estate has but a slight and remote interest. And, in conclusion, it may be said that, after all, the real question involved in the controversy between the Dawson estate and the city seems to be one of law, which can be fully presented and taken care of upon the appeal from the judgment entered upon the referee's report.

For the foregoing considerations, the case at bar is completely covered by the case of Baird v. Mayor, etc., of New York, 74 N. Y. 382. A motion was made in that case to remove John K. Porter as referee, upon the ground that the referee had such professional relations with the plaintiff and his assignor as to render it improper that the case should be tried by him. It appeared by the affidavits that the referee was counsel for a corporation intimately connected with the plaintiff, and Judge Davis, at chambers, in denying the motion, said:

"It is not pretended that the employment of Judge Porter as counsel for the Gilbert Elevated Railway Company has been brought about, since the reference to him, for the purpose of affecting his determination of this case; for his retainer was long antecedent to the reference, and neither the plaintiff nor his assignor ever had anything to do with it, nor has it occasioned any personal relations between him and the plaintiff or his assignor, that can reasonably be supposed to have affected to any extent his judicial fairness. I have looked through the affidavits and the proceedings on the reference, and the statements of the counsel on this subject before the referee, to see if I could discover the slightest ground for a suspicion that his decision of this case might be influenced by the fact of his being counsel for the Gilbert Elevated Railroad Company; but I can discover no ground whatever for entertaining such belief or

fear. The counsel on both sides frankly declare that they neither make nor believe in any such imputation. The case is not brought, therefore, within any of the authorities cited where a party to a reference, with obvious intent to gain favor with a referee, has employed him as counsel, or placed business in his hands, and the referee has accepted the same with reason to suppose that such was the intent."

This opinion is in manuscript, but, upon the affirmance of the order denying the motion to set aside the order of reference by the general term, an appeal was taken to the court of appeals, and the court said:

"We think this order should be affirmed. The question whether there were any relations between the referee and the plaintiff, or his assignor, which rendered it improper for the referee to hear and decide the case, and called upon the court to vacate the order of reference, was addressed to the discretion of the court below, and its decision is not reviewable here. We may say, however, in passing, that, in our judgment, there is not the slightest ground for the motion in this respect." Baird v. Mayor, etc., of New York, 74 N. Y. 382–385.

The motion to set aside the referee's report and the judgment entered thereon should be denied, with $10 costs; but the moving party may have 30 days after service of a copy of the order to be entered hereon to make and serve a case on appeal. Order to be settled on notice.